UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAEWEATHERS MARSHALL, Plaintiff, v. ALAMEDA COUNTY, et al., Defendants. | Case No. 17-cv-03310-SI **ORDER OF DISMISSAL WITH LEAVE TO AMEND** Re: Dkt. No. 1 |

Maeweathers Marshall, an inmate at the Correctional Training Facility in Soledad, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983. The complaint is now before the court for review under 28 U.S.C. § 1915A.

**BACKGROUND**

Marshall filed three civil rights actions, all pertaining to events and omissions that occurred in or about July 2016: *Marshall v. Alameda County*, No. 17-cv-3195 SI; *Marshall v. Alameda County*, No. 17-3310 SI; and *Marshall v. Hammed*, No. 17-cv-3736 SI. The cases earlier were assigned to a magistrate judge but recently were reassigned to the undersigned following the Ninth Circuit's decision in *Williams v. King*, 875 F.3d 500 (9th Cir. 2017) (magistrate judge lacked jurisdiction to dismiss case on initial screening because unserved defendants had not consented to proceed before magistrate judge).

The handwriting on the complaint is especially difficult to read, the narrative jumps around in time, and numerous irrelevant facts are alleged. From what the court can understand, the complaint alleges the following in a single sixteen-page paragraph:

On July 6, 2016, Marshall was not given a bag lunch by deputy Hammad and deputy Helfrick. This was done in retaliation because Marshall asked for a grievance form. Hammad and Helfrick said that lunch was not served because Marshall had threatened to gas them (i.e., to throw urine or feces on them). Docket No. 1 at 9. Marshall argues that, even if he did threaten to gas them, he had to be fed. *Id.* at 10.[1]

On July 8, 2016, Marshall was moved to a disciplinary housing unit by deputies McDermott and Linn without a hearing. This move was done in retaliation for Marshall writing a grievance. He didn't receive pod time in retaliation for past grievances. *Id.* at 5.

Deputies Linn and McDermott also took other steps to retaliate against Marshall for his grievance-filing activities. Linn wrote a false report to get Marshall's pain medications discontinued on July 6 or 7, 2016. *Id.* at 11. Linn and McDermott did not clean Marshall's cell on July 19, 2016 after another inmate gassed Marshall's cell; later, the guards got someone to clean the cell partially. *Id.* at 12. Linn and McDermott refused to believe Marshall's statement on July 9, 2016 that he had a lower bunk/lower tier chrono. (He had been moved to an upper tier cell on July 9, 2016 after writing a grievance. *Id.* at 13.)

Guards did not clean up after another inmate gassed a third inmate. *Id.* at 13-14.

Some defendants denied Marshall's inmate grievances. *Id.* at 10.

On July 10, 2016, Marshall slipped and fell down the stairs while trying to catch trays that were falling from his grasp. *Id.* at 16. He was hurt and was taken to Highland Hospital for treatment. *Id.* at 16-17. He later was released from the hospital after being given a cane and gabapentin. *Id.* at 17.

Guards took a file from another inmate's cell that pertained to Marshall's criminal and civil litigation. Marshall was receiving legal help from that inmate. *Id.*

---

[1] In his amended complaint, Marshall must state whether he threatened to gas the guards. His argument that he had to be fed even if he did make a threat is irrelevant (and should be omitted from the amended complaint) if he did not threaten the guards. Although plaintiffs ordinarily may plead alternate legal theories, a plaintiff submitting a complaint under penalty of perjury cannot plead alternate facts about his own behavior. Here, Marshall either did or did not threaten to gas the guards, and he should state the true facts in his amended complaint.

2

Deputy Rodriguez dumped Marshall out of his wheelchair and dragged him in waist restraints into his dirty cell on July 19, 2016. (The allegations against deputy Rodriguez repeat the claim asserted in the complaint (Docket No. 1 at 6-7) in Case No. 17-cv-3195 SI.)

After returning from Highland Hospital, Marshall's aluminum cane was taken away. Also after returning from Highland Hospital, Marshall had a seizure and urinated on himself; assistance was not provided. The next day, he defecated on himself in bed. (These allegations repeat claims asserted in the complaint (Docket No. 1 at 6) in Case No. 17-3195 SI.)

There may be additional claims against custodial staff, but the court cannot read many words in the complaint due to Marshall's poor handwriting.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The complaint has several deficiencies, making it necessary for Marshall to file an amended complaint.

First, Marshall does not allege whether he was a pretrial detainee or had been convicted when the events and omissions giving rise to the complaint occurred. His status affects the analysis of his claims because the constitutional basis for some claims is different, and different standards may apply, depending on whether the inmate is a pretrial detainee or convict at the

3

relevant time. For example, a deliberate indifference to safety claim arises under the Fourteenth Amendment for a pretrial detainee, and arises under the Eighth Amendment for a convict. If a plaintiff has transitioned from being a pretrial detainee to a convict (or vice-versa), both standards may need to be applied -- with one standard being applied to the events that occurred when the person was a pretrial detainee and a different standard being applied to the events that occurred after he was convicted. In his amended complaint, Marshall must allege whether he was a pretrial detainee or a convict. If he had one custodial status at one time and another custodial status at another time, he should describe the dates during which he was a convicted prisoner and the dates during which he was only a pretrial detainee.

Second, Marshall needs to re-allege his retaliation claims because his allegations are unduly confusing. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). The problem here is that Marshall describes his inmate grievances in so much detail that the court is unsure whether he is merely identifying the First Amendment activity that allegedly prompted the retaliation or is also trying to allege claims based on the substance of the grievance. If he is only trying to describe the First Amendment activity that allegedly prompted the retaliation, Marshall should omit the description of the substance of the inmate grievance that prompted the retaliation.

Third, Marshall alleges that he was put in disciplinary housing for no reason, but the allegations of the complaint seem to suggest that he already was in disciplinary housing before the move occurred. *See* Docket No. 1 at 3. In his amended complaint, Marshall must be clearer as to where he was moved to and from. If he was only moved from one disciplinary cell to another disciplinary cell, he needs to explain why a new hearing was necessary. He also needs to describe the change in conditions between the cell to which he was moved and the cell he had been occupying.

4

Fourth, Marshall appears to complain about the processing of some of his inmate appeals. There is no federal constitutional right to a prison or jail administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Prison and jail officials are not liable for a due process violation for simply failing to process an appeal properly, denying an inmate appeal or granting an inmate appeal. A claim under § 1983 for a due process violation is not stated against any defendant for the handling of Marshall's inmate appeals. In his amended complaint, he should omit claims about the handling of his inmate appeals.

Fifth, Marshall must link defendants to his claims by alleging facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right). A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

If Marshall does not know the true name of the alleged wrongdoers, he may use Doe defendant designations, so that each person is separately identified as a Doe defendant, e.g., John Doe # 1, John Doe # 2, Jane Doe # 1, etc. Although the use of Doe defendants is acceptable to withstand dismissal of the complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names. The court will not stall this action while Marshall tries to learn the name of the Jane Doe and John Doe defendants. Rather, Marshall must promptly take steps to discover the name of the unnamed defendants and provide that information to the court in an amendment to his pleading. The burden remains on the plaintiff; the court will not undertake to investigate the names and identities of unnamed defendants. Marshall must provide the true names and identities of the Jane Doe and John Doe defendants within 120 days of the date of this order or they may be dismissed

1  without prejudice to him filing another action against them. Marshall's use of a Jane Doe
2  defendant has the additional problem that he appears to be referring to several people as a single
3  Jane Doe defendant. If there are multiple unknown persons, each unknown defendant must be
4  identified as a separate Jane Doe, e.g., Jane Doe # 1, Jane Doe # 2, etc., so that eventually each
5  Jane Doe defendant can be replaced by a separate person when her true name becomes known.

6  Sixth, Marshall has named Alameda County as a defendant, but the complaint does not state a claim against that entity. There is no respondeat superior liability under § 1983, i.e., no liability under the theory that one is liable simply because he employs a person who has violated a plaintiff's rights. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)*; Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The mere fact that the alleged individual wrongdoer was employed by an institutional defendant would not be a sufficient basis on which to hold the employing institutional defendant liable. Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell,* 436 U.S. at 690. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). For municipal liability, a plaintiff must plead sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief. *See AE v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012). It is not sufficient to merely allege that a policy, custom or practice existed or that individual officers' wrongdoing conduct conformed to a policy, custom or practice. *See id.* at 636-68.

Seventh, Marshall has no standing to assert claims based on the violation of other inmates' rights. In his amended complaint, he only may include claims about violations of his own rights.

Eighth, as noted earlier, Marshall filed three actions about events and omissions happening at roughly the same time. Generally speaking, it appears that this action (17-cv-3310 SI) has the

claims against the guards and custody staff, another action (17-cv-3195 SI) has the medical claims, and a third action (17-cv-3736 SI) has claims about a missed lunch. It is permissible for Marshall to pursue his claims in three separate actions, but it is not permissible to assert the same claim(s) in more than one action. Many of the allegations in this action appear to be the same as allegations in other actions. For example, in both this action and Case No. 17-cv-3195 SI, Marshall complains about deputy Rodriguez dumping him out of his wheelchair, and medical staff's failure to assist him after he had a seizure and urinated on himself. Marshall must be careful to keep his actions separate and not repeat claims in different actions. Marshall needs to figure out a coherent division of his claims if he wants to pursue them in separate actions. This is especially important because the court will not permit him to file a single document for inclusion in two or three cases in future filings.

Ninth, Marshall's handwriting is very difficult to read. He repeatedly used similar pen marks that the court had to puzzle over to try to discern the particular letter (e.g., the same mark might be an s, v, r, or n) that was supposed to be represented by the pen mark to determine what the word was so that the sentence could be understood. The court accepts handwritten as well as typed documents from *pro se* litigants, but requires that all documents must be legible. In future filings, Marshall must write much more neatly or type his documents or get another inmate to write them for him. The court will reject documents that it cannot read.

Finally, Marshall's complaint is unusually difficult to read for reasons in addition to the poor handwriting: The claims are described in one paragraph that runs for sixteen pages. The complaint is made unduly long by Marshall's inclusions of argument about his thoughts on defendants' motives. His chronology of events jumps around in time and is repetitious. In his amended complaint, Marshall is encouraged to try to make the statement of claims easier to understand by, e.g., breaking up the claims into more than one paragraph; describing facts and omitting arguments; and using a straightforward chronology of events that is not repetitious.

**CONCLUSION**

The complaint is dismissed with leave to amend. Plaintiff must file an amended complaint that complies with the directions in this order no later than **February 23, 2018**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint will result in the dismissal of this action.

**IT IS SO ORDERED**.

Dated: January 19, 2018

SUSAN ILLSTON
United States District Judge